PROSPECT DAIRY, INC., Plaintiff,

v.

DELLWOOD DAIRY CO., Inc., Tilly Foster, Inc., Emmadine Farms Corp., Dutcher's Dairy, Inc., Kuritzky's Dairy, Inc., John J. Foley, Fred A. Conrad, as President and John A. Manchester, as Treasurer of Milk Drivers and Dairy Employees Union, Local No. 338, Affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Patrick J. Hart and Luke Kennedy, Defendants.

Civ. No. 9662.

United States District Court
N. D. New York.

July 29, 1964.

John P. Weatherwax, Troy N. Y., James M. Strang, Troy, N. Y., of counsel, for plaintiff.

Hays, Sklar & Herzberg, New York City, Howard A. Heffron, Frederick F. Greenman, Jr., New York City, of counsel, for defendants Dellwood Dairy Co., Inc. and Tilly Foster, Inc.

Sturm & Perl, New York City, Abraham Fishbein, New York City, of counsel, for defendants Emmadine Farms Corp. and Kuritzky's Dairy, Inc.

Louis Schachter, New York City, for defendant Dutcher's Dairy, Inc.

Cohen & Weiss, New York City, Bruce H. Simon, New York City, of counsel, for defendants Fred A. Conrad, as President and John A. Manchester, as Treasurer of Milk Drivers and Dairy Employees Union, Local No. 338, etc., Patrick J. Hart and Luke Kennedy.

O'Donnell & Condon, Yonkers, N. Y., for defendant John J. Foley.

JAMES T. FOLEY, Chief Judge.

This motion to remand presents more than the usual complexity found in such problems. The difficulty arises because the dispute involves milk interests, a labor organization and its representatives, and is based upon charges of conspiracy to monopolize and restrain trade by an alleged combination of employers and union representatives in the use of illegal and coercive pressures. The complaint, filed originally in the Supreme Court of New York, Delaware County, contains thirty-four separate allegations, many with enormous detail, and seeks injunction and one million dollars compensatory damages as well as one million dollars punitive damages. (See Local 20, Teamsters, etc. v. Morton, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280). The briefing has been in great depth covering many of the writings of the federal courts, particularly of the Supreme Court in the labyrinth relating to the pertinent provisions of the Sherman Act and the Labor Management Relations Act of 1947. It would not be a simple task to interpret and apply the provisions of one of these Acts alone. In the complaint here we have a commingling of allegations that arguably at least describe overtones of both that must be unravelled.

Delicate problems of interplay between state and federal jurisdiction as well as preemption by the National Labor Relations Board exclusive of both state and federal courts with fine distinctions will never be subject to easy solution. (See Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 474, 75 S.Ct. 480, 99 L.Ed. 546; International Assoc. of Machinists et al. v. Gonzales, 356 U.S. 617, 619, 78 S.Ct. 923, 2 L.Ed.2d 1018). The highest authority has not yet considered decisively the various problems concerning removal under 28 U.S.C. § 1441. (Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 507, 514 fn. 8, 82 S.Ct. 519, 7 L.Ed.2d 483). It has been emphasized the pre-emptive doctrine of cases such as San Diego Building Trades Council, etc. et al. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, based upon the exclusive jurisdiction of the National Labor Relations Board is not always relevant to the problem at hand. (Local 174, Teamsters, etc. v. Lucas Flour Co., 369 U.S. 95, 101, fn. 9, 82 S.Ct. 571, 7 L.Ed.2d 593.) Suit under the Labor Act, either in federal courts or state courts empowered to act,

is proper even though an alternative remedy before the Board is available, which if invoked by the employer will protect him. (Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320.) The tendency has become increasingly clear by the writings of the Supreme Court to emphasize supremacy of the federal law over matters within its scope, to restrict state injunction against picketing and to broaden the scope of permissible picketing. (San Diego Building Trades Council, etc., et al. v. Garmon, supra; Hattiesburg Building & Trades Council et al. v. Broome (Per Curiam), 377 U.S. 126, 84 S.Ct. 1156, 12 L.Ed.2d 172; Liner v. Jafco, Inc., 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed. 2d 347; NLRB v. Servette, Inc., 377 U.S. 46, 84 S.Ct. 1098, 12 L.Ed.2d 121; NLRB v. Fruit & Vegetable Packers, etc., 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed. 2d 129.)

This brief review is made only to point up the massive judicial discussion to be analyzed, the favoring of federal superintendence and the necessity to be wary and not be led astray by the breadth of the writing into principles not germane.

■ Primarily, under the federal removal procedures, attention must be directed to the complaint and claims therein to determine whether a federally created right or immunity is an essential element of the plaintiff's cause of action. (28 U.S.C.A. § 1441; Giba v. International Union of Electrical, Radio and Machine Workers, etc. (D.C.Conn.), 205 F.Supp. 553, 555; Nelson et al. v. Leighton et al. (NDNY), 82 F.Supp. 661.) The complaint, stated in summary fashion, charges the milk dealers entered into an agreement, combination and conspiracy to restrain and unlawfully interfere with the free exercise of the activities of the plaintiff in the conduct of its business in Westchester and Putnam Counties, particularly by such illegal combination to prevent the plaintiff from selling milk in those counties under the trade label "JUG-O-MILK". It is generally charged this was done to maintain a monopoly in the sale of milk, and the union officials were induced in the operation of the conspiracy to aid and abet such unlawful agreement by using coercion and other pressures on the plaintiff and its employees and customers. Detailed overt acts are charged against the Union and the representatives allegedly in furtherance of the common, illegal aim of monopoly, inducing employees of plaintiff to become members of the Union and to leave jobs, causing picket lines to surround plaintiff's plants at Peekskill and Stamford, New York, and threatening customers of plaintiff with picket lines around their stores, and making threats orally and in writing designed to discourage the use of plaintiff's product. It is stated in Allegations Thirty-one and Thirty-two that when seven employees of the plaintiff abandoned their jobs at the Peekskill plant, no labor dispute problem or difficulties were involved, and it is emphasized "at no time has there existed any bona fide labor dispute", and the conspiracy was in violation of Section 340 of the General Business Law of New York, McKinney's Consol.Laws, c. 20. It is now disowned as superfluous, but the statement is added that the conspiracy and acts committed pursuant thereto also contravene "and such other provisions of law, both under federal and state mandate applicable thereto". In the numerous requests for varied injunctive relief in the complaint it is significant to note judicial restraint specifically is sought against picketing of plaintiff's customers' stores and its milk producing and processing plants.

The attorneys for the plaintiff, in earnest contention and able briefing, seek to confine its complaint as one solely within the state jurisdiction as pleaded, immune from federal removal. It is argued that the complaint is one for common law tort under New York law, alleging conspiracy, and the means charged to reach the aim of the conspiracy do not involve a bona fide labor dispute in the federal sense. I am unable to agree. My reading of the complaint impresses upon me a substantial reliance throughout the pleading not only upon facts that come within the

Sherman Anti-Trust Act but also the Labor Management Act. (See Minkoff v. Scranton Frocks, D.C., 172 F.Supp. 870, 873.) The underpinning of the complaint is two federal statutes. It is elementary, of course, that for both acts to apply it must be evident that the plaintiff is engaged in interstate commerce or its activity in the milk business has a substantial effect upon it. Such interstate activity is claimed in the petition for removal and vigorously disputed by the plaintiff.

■■ Settled law, in my judgment, entitles the defendants to prevail on this question. The Sherman Act applies to intrastate transactions which substantially affect interstate commerce. (Mandeville Island Farms v. American Crystal Sugar Co., 334 U.S. 219, 235, 68 S.Ct. 996, 92 L.Ed. 1328; United States v. Women's Sportswear Manufacturers Assoc., 336 U.S. 460, 464, 69 S.Ct. 714, 93 L.Ed. 805; United States v. Employing Plasterers' Assoc. of Chicago, et al., 347 U.S. 186, 189, 74 S.Ct. 452, 98 L.Ed. 618.) To satisfy the requirement of Section 1 of the Sherman Act it need only be shown alleged restraint on interstate commerce was not "insufficient or insubstantial". (Syracuse Broadcasting Corp. v. Newhouse, 2 Cir., 295 F.2d 269, 276; International Salt Co., Inc. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20; see also Times-Picayune Publishing Co. et al. v. United States, 345 U.S. 594, 609, 73 S.Ct. 872, 97 L.Ed. 1277; Lieberthal v. North Country Lanes, Inc. et al., 2 Cir., 332 F.2d 269.)

■ It is inescapable, in my judgment, that the nature of a milk business conducted in the manner of the plaintiff being admittedly substantial affects interstate commerce sufficiently. (United States v. Rock Royal Co-operative, Inc., et al., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446; Crestwood Dairy v. Kelley, EDNY, 222 F.Supp. 614, 615.) It must also be considered, in support of the interstate commerce requisite as shown by affidavit in this record, the plaintiff conceded before a Hearing Officer in 1963 that it was engaged in interstate commerce and subject to the jurisdiction of the National Labor Relations Board. Under the Labor Act the maxim de minimus is applied to the amount of commerce necessary to come within its provisions. (NLRB v. Fainblatt, 306 U.S. 601, 607, 59 S.Ct. 668, 83 L.Ed. 1014.) In each instance, under the Sherman Act and Labor Act there is sufficient showing of enough interstate commerce activity to warrant application of federal statutes.

■■ As the defendants urge, and I agree, the plaintiff has pleaded claims with essential federal elements that involve the Sherman Act as well as a claim under Section 303 of the Labor Management Relations Act, 1947, 29 U.S.C. § 187. Under Section 303 it has been held that new federal substantive rights are created, and it is plainly an action under the laws of the United States and cognizable in a Federal Court under 28 U.S.C.A. § 1331. (Pepper & Potter v. Local 977, United Auto Workers (SDNY), 103 F. Supp. 684, 690.) It should be remembered that Section 303(b) confers concurrent jurisdiction on state and federal courts, but that does not impair the removal right when present. As far as a bona fide labor dispute is concerned, the definition in Liner v. Jafco, Inc., 375 U.S. 301, 309, fn. 6, 84 S.Ct. 391, 11 L.Ed.2d 347, would, in my judgment, embrace the relationship here. The wording of the charges in the complaint against union activity is almost identical to the wording of the federal statute in regard to unfair labor practices and secondary boycotts. The case relied upon by the plaintiff, Hat. Corp. of America v. United Hatters (D.C. Conn.), 114 F.Supp. 890, is questioned as authoritative in National Dairy Products Corp. v. Heffernan (EDNY), 195 F.Supp. 153, 155, since the Lincoln Mills ruling. (Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972.)

■■ It is settled in the law that a labor union, if proven to combine with a non-labor organization as an employer, to restrain competition is subject to the Sherman Act. (Allen Bradley Co. v. Local Union No. 3, International Brother-

hood of Electrical Workers, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939; United Brotherhood of Carpenters and Joiners of America v. United States, 330 U.S. 395, 400, 67 S.Ct. 775, 91 L.Ed. 973; Los Angeles Meat & Provision Drivers Union, etc. v. United States, 371 U.S. 94, 99–101, 83 S.Ct. 162, 9 L.Ed.2d 150.) Under my reasoning, either claim in this complaint might carry non-removal or state claims if such were present and pendente jurisdiction would allow the federal court to decide them. (H. A. Lott, Inc., et al. v. Hoisting & Portable Engineers Local No. 450 (S.D.Texas), 222 F.Supp. 993; Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; 28 U.S.C. § 1441(c).

The irregularities and deficiencies concerning formalities of signature by attorneys and parties in the petition of removal if to be considered substantial were, in my judgment, properly corrected within the statutory time by amendment.

The motion to remand is denied, and it is

So ordered.